[Civ. No. 3765. Fourth Dist. May 26, 1949.]

NARCISSA HANNA et al., Respondents, v. M. M. PIPES et al., Appellants.

Dorris, Fleharty & Phillips for Appellants.

Siemon, Maas & Siemon for Respondents.

BARNARD, P. J.—In 1935, Narcissa Hanna employed Samuel Taylor, an attorney at law, to collect three notes totaling $750, with interest at 7 per cent, all dated February 23, 1932. These notes were signed by the defendants and were payable to Mrs. Hanna "and/or" her former husband. Mrs. Hanna delivered these notes indorsed in blank to Taylor with instructions to collect them. A few small payments were made and on February 23, 1939, the date when the last of the three notes would become outlawed the defendants renewed the obligation by signing and giving to Taylor two new notes, one for $745 and one for $223.50. These notes were made payable to Samuel Taylor and Narcissa Hanna, as joint tenants, one year after date with interest at 7 per cent. The defendants paid to Mrs. Hanna, on account of these notes, $50 on December 19, 1939, and $100 on October 2, 1942.

On February 16, 1944, one week before these notes would outlaw, Taylor brought this action on these two notes, naming Mrs. Hanna and himself as plaintiffs. The complaint is in the usual form, in two counts, setting forth copies of the notes and alleging that the plaintiffs are the owners and holders thereof, and entitled to receive payment. In their answer

the defendants denied generally each allegation of the complaint, denied specifically that any part of the notes is now due, owing and unpaid and, as an affirmative defense, alleged that any indebtedness alleged in the complaint has been fully paid and satisfied.

At the trial the defendants made some attempt to show that these notes had been altered, and to show both that the notes had been fully paid and that they had been satisfied and discharged in some other manner. While the evidence, including the testimony of the defendant husband, conclusively shows that the notes had not been paid in full the defendants relied upon a letter from Mrs. Hanna to them dated December 15, 1942, and upon an affidavit purportedly executed by Mrs. Hanna on November 24, 1947, a few days before the trial, as showing a complete satisfaction and discharge of the obligation. About two-thirds of the reporter's transcript is taken up with the argument of the defendants' counsel, in various forms and repeatedly made, to the effect that this action could not be maintained because Taylor had no such interest in these notes as would enable him to sue in his own name or which would prevent Mrs. Hanna from discharging him, and that Mrs. Hanna had not authorized him to bring the action. Near the conclusion of the trial on December 5, 1947, the question came up as to the mental condition of Mrs. Hanna, who was not present at the trial, and her competency to execute the affidavit offered and to understand the facts therein stated. The case was continued to allow an investigation to be made along that line. Mrs. Hanna died on January 2, 1948, before this investigation was made. On April 16, 1948, the plaintiffs' motion for submission of the cause was granted, and it was further ordered that a motion made by the defendants to have the deposition of Taylor introduced as testimony be taken under submission. The court found in all respects in favor of the plaintiffs, and judgment was entered in favor of Taylor for the balance due on the notes. The defendants have appealed from that judgment.

The appellants first contend that Taylor had no interest as an ''owner'' of these notes or as attorney for Mrs. Hanna which would entitle him to sue in his own name or would prevent her from discharging him, or prevent her from dealing independently with the makers; that Taylor is not the real party in interest; and that the court repeatedly committed reversible error in denying to defendants the right to show that Taylor had no interest as owner, or otherwise,

which would entitle him to maintain the action. The statement of most of these contentions should be a sufficient answer to them under the circumstances shown by the record in this case. The court was very patient, and permitted the appellants to repeatedly bring out the exact situation. Taylor was the agent and attorney for Mrs. Hanna for the collection of the original notes which Mrs. Hanna had delivered to him indorsed in blank. Just before the last of those notes was outlawed Taylor demanded and received from the appellants the notes sued upon. Whether or not he exceeded his authority in inserting his name as one of the payees in the notes might be material as between himself and Mrs. Hanna, but had, and has, no bearing on the present controversy. While Mr. Pipes testified that Mrs. Hanna once told him, in 1942, that she had discharged Taylor as attorney in this matter there is no evidence that Mrs. Hanna ever communicated such a fact to Taylor, and Taylor denied that Pipes had ever told him that Mrs. Hanna had so stated. Taylor had been employed to collect this debt; he secured the new notes when the old ones were outlawed; he continued in possession of the notes without being discharged and made repeated efforts to collect them; and finally brought suit shortly before the new notes would have outlawed. The contention that the appellants were denied the right to show Taylor's interest or lack of interest is without merit. The exact situation was repeatedly brought out, and was conceded by the other side. The real contention throughout, was and is, that the court should have accepted appellants' interpretation of the situation as conclusively showing that a recovery could not be had in this action. If any reason existed why this action could not be maintained it neither appears nor is suggested by anything contained in this record. It was conceded throughout that anything done by Mrs. Hanna was equally binding on Taylor, and the court gave the appellants ample opportunity to present any material evidence bearing on the question of their liability in this action.

The court found that, with the exception of certain payments which were credited, no part of the principal or interest of these notes has been paid and that the same are now due, owing and unpaid. The evidence fully supports this finding and the appellants do not contend to the contrary. However, in support of their theory that their debt had been forgiven and discharged by Mrs. Hanna they contend that the court committed reversible error in refusing to admit

into evidence their "Exhibit D" for identification, which is among the exhibits before us.

Mr. Pipes first testified that he had made various payments amounting in all to more than the principal and interest of the notes but that he could not remember when these payments were made and could not find any checks except for the $50 and $100 payments. He then admitted that he had paid nothing after October 2, 1942, because Mrs. Hanna, in a letter to him dated December 15, 1942, had "inferred" that she had plenty of money. In this letter, which was admitted in evidence, Mrs. Hanna stated that she had heard that a Miss Truesdell was going to write to Pipes, that this woman was no longer her friend, and that "I have plenty of money so don't let *meddlers* bother you." Mr. Pipes testified that he considered this quoted statement as a receipt in full, and that he never paid any more on the notes after that.

Mr. Pipes testified that shortly before the trial he and his wife and his attorney visited Mrs. Hanna in a rest home where she was staying, that after he told her who he was she recognized him, and that she told him "You don't owe me one thing. You paid me all you owed me. I don't know anything about this." A day or two later Mr. Pipes received a letter from Mrs. Hanna's niece, which was introduced in evidence. In this letter the niece stated that Mrs. Hanna "is in a fighting mood and understands nothing about the business you came to see her about." The letter then stated that if her aunt could help out by signing a paper "I think we can get her to sign it, but it really will take some doing. . . . It will take a lot of sweetening and being with her at just the right moment to get her signature." A day or two later the appellants and their attorney went to the niece's home and there prepared the affidavit, Exhibit D for identification, in which Mrs. Hanna purportedly states that she never conveyed any interest in the notes sued on or any other notes to Taylor, that she never authorized Taylor or anyone to commence and prosecute this action in her name or otherwise, and that the indebtedness which originally existed between Mr. and Mrs. Pipes and herself, which indebtedness was evidenced by the notes sued on, has been for many years totally paid, discharged and satisfied.

Mrs. Hanna was then past 92 years old, the entire evidence shows she was then in a most enfeebled condition, and she died shortly thereafter. The evidence is that the niece held Mrs. Hanna's hand in order to assist her to sign the affidavit.

Her signature is almost illegible and shows a marked contrast to her signature on her previous letter of December 15, 1942. When the court asked why Mrs. Hanna's deposition could not be taken appellants' counsel stated ''She is so old and her health is such she can never testify nor can her deposition be taken.''

Not only does it rather clearly appear that Mrs. Hanna did not sign this affidavit with an understanding of its contents but it also appears that the factual statements attributed to her in the affidavit, so far as material here, are not true. While Mrs. Hanna had not, in words, instructed Taylor to file this action his authority to do so as her agent and attorney sufficiently appears from the facts shown, and it conclusively appears that the debt represented by these notes had not been totally paid, discharged or satisfied many years before or at any time theretofore.

The specific point here raised is that the court erred in not admitting this affidavit into evidence. Assuming that it was admissible as a statement against interest on the part of Mrs. Hanna or for some other reason, its effect was completely overcome by the other evidence, including the testimony of Mr. Pipes, and it would merely have tended to add to an existing conflict in the evidence. The question of its admission into evidence came up a number of times interspersed with a great deal of argument, much of it immaterial, and with other testimony. The court examined the affidavit and commented on it and said: ''It is apparent from the entire contents of the affidavit that it is intended as testimony rather than just as a receipt; and in view of the hearsay rule we will reject the affidavit.'' Later, while evidence was being taken with respect to the circumstances surrounding the making of this alleged affidavit, counsel for appellants objected and the court stated that while he had ruled against the admission of the document as constituting a satisfaction in full of the obligation sued on he might be wrong in that ruling and he thought all of the circumstances under which the document was executed should be brought out. Later the court stated he would welcome any information on the matter that might result from an investigation as to the competency of Mrs. Hanna, and the matter was postponed. When the matter came on for final hearing reference was made to the fact that the court had previously rejected Exhibit D for identification, and the court again confirmed this. While, technically, this exhibit should have been admitted in evidence no prejudice

appears. There was no jury and the court read the document, considered it and commented on it at length. It was actually offered on the theory that it constituted a written satisfaction in full. In effect, the court held that it was not a receipt for payment and that it should not be received as a satisfaction in full of the debt. Its technical admission into evidence could not have affected or changed the result. It was conceded by the respondents throughout the trial, and is conceded here, that any payments made to Mrs. Hanna or any satisfaction or release of the obligation otherwise given by Mrs. Hanna would be binding also on the respondent Taylor. The evidence, including the affidavit, is amply sufficient to sustain the court's findings that this debt had not been paid and that the balance, as found, is still due, owing and unpaid.

It is further contended that the evidence conclusively shows, as a matter of law, that the notes were altered subsequent to their execution. The notes, which are before us, are payable to Samuel Taylor and Narcissa Hanna, as joint tenants. The appellants testified that when they signed the notes in Taylor's office Mrs. Hanna's name only appeared thereon as payee. The written portions of the notes, with the exception of the signatures of the makers, is admittedly in the handwriting of Taylor. Taylor testified that all of this writing was done by him at one time and that the notes were then read and signed by Mr. Pipes and later by Mrs. Pipes. The appellants argue that these notes show on their face that the words "Samuel Taylor and," and the words "as joint tenants," were written after the words "Narcissa Hanna" were written. Conceding this to be true, there is nothing on the notes to indicate that all of these words were not written before the notes were signed by the makers. The conflict in this regard was settled by the court in favor of the respondents.

The appellants complain that the court erred in refusing to permit them to introduce into evidence a deposition of Samuel Taylor taken a few days before the trial. This deposition appears in the reporter's transcript but was not admitted in evidence. It was again offered at the final hearing of the action. The court then asked whether there was anything in the deposition that did not appear in Taylor's testimony at the trial, or whether there was anything in the deposition which was inconsistent with that testimony. Appellants' counsel in reply to the court's questions then stated that there were some questions which were not answered and

which were not in evidence, and that these were questions with respect to which the court had sustained an objection when Taylor was on the stand. When the cause was submitted the court also took under submission the question of whether or not the deposition would be admitted. No ruling seems to have been made in that regard. Aside from any other consideration, it fully appears that everything in the deposition that was at all material here was brought out during Taylor's testimony at the trial, and no possible harm or prejudice appears.

Appellants further contend that since Mrs. Hanna died prior to judgment the court had no jurisdiction, in the absence of the substitution of a personal representative, to proceed with the action or to enter judgment. The notes were payable to Mrs. Hanna and Taylor as joint tenants and, for the purpose of this action at least, Taylor was vested with title and with right to continue the action. (*Plante* v. *Gray*, 68 Cal.App.2d 582 [157 P.2d 421]; *Salisbury* v. *Shirley*, 66 Cal. 223 [5 P.104]; *Denigan* v. *San Francisco Savings Union*, 127 Cal. 142 [59 P. 389, 78 Am.St.Rep. 35].)

The court entered judgment in favor of Taylor as the survivor, and the appellants are neither prejudiced nor in a position to object. As the respondent Taylor concedes, he is accountable to the heirs or personal representatives of Mrs. Hanna for the proceeds of the judgment if and when such proceeds are received by him.

Finally, the appellants contend that the findings and judgment are outside of and beyond the issues as framed by the pleadings because the action was not based on the right of a survivor of joint obligees to sue and recover after the death of his coobligee. This contention is without merit. The notes were payable to the plaintiffs as joint tenants, the death of Mrs. Hanna was brought to the attention of the court before judgment was entered, and judgment was properly entered in favor of the survivor. The fact that the appellants owe the balance of this just debt clearly appears. A reversal on technical grounds, and a retrial of the action, could by no possibility benefit the appellants.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied June 17, 1949, and appellants' petition for a hearing by the Supreme Court was denied July 21, 1949.