BOWES, RESPONDENT, v. REPUBLIC OIL CO. ET AL., DEFEND-
ANTS; FORBES, TRUSTEE, APPELLANT.

(No. 6,020.)

(Submitted January 4, 1927. Decided January 17, 1927.)

[252 Pac. 800.]

*Oil and Gas Leases—Failure to Drill Within Time Limit—For-
feiture of Lease—Waiver—Estoppel.*

Oil and Gas Leases—Termination—Intention of Parties Controlling
Factor.
 1. The intention of the parties to an oil and gas lease and not
its mere wording is determinative of whether it is an "or" lease
under which the lessor must take affirmative action to terminate
it for failure on part of the lessee to perform his part of the con-
tract as stipulated, or an "unless" lease, which terminates *ipso facto*
on his failure to exercise the option to commenrce and continue
operations within the time limited, without action on the lessor's
part.

Same—Strict Construction Against Lessee.
 2. Oil and gas leases, executed as they are for the purpose of ex-
ploration and development of lands and prevent delays in so doing,
must be liberally construed in favor of the lessor and strictly
against the lessee, and forfeiture of such leases are favored rather
than frowned upon by the law.

Same—Lease Held in Effect an "Unless" Lease—Expiration on Failure
of Lessee to Exercise Option.
 3. Under the above rules of construction, *held* that an oil and gas
lease which did not conform to any of the known forms of such
leases and under which the lessor granted, demised, leased and let
the lands described to the lessee for the purpose of "operating for
oil" and the lessee "covenanted and agreed" that unless operations
were commenced on or before a certain day and prosecuted with
diligence, the lease should be null and void, the lessee being em-
powered to surrender the lease for cancellation at any time on
payment of one dollar, did no more than grant the lessee the
privilege of drilling or not drilling at his option, and was in effect
an "unless lease," which automatically expired on failure of the
lessee to exercise the option granted within the time limited, with-
out affirmative action by the lessor declaring a forfeiture.

Same—Failure of Lessee to Drill Within Time Stipulated—Drilling on
Land Adjoining Lessor's—Waiver—Estoppel.
 4. Where an oil and gas well provided that the lessee should
within ten months commence drilling a well on the lessor's land

---

1. See 18 R. C. L. 1213.
2. See 18 R. C. L. 1214.
4. Time for drilling wells, see note in 11 A. L. R. 139.

or on land adjoining, and the lessee did commence operations within that time but abandoned them and, two years after the lease had been forfeited, drilled a new well on land not belonging to the lessor, the latter's failure to object to these operations did not constitute a waiver of the forfeiture nor an estoppel to assert it in his action to quiet title to the lands covered by the forfeited lease.

[1]   Mines and Minerals, 40 C. J., sec. 666, p. 1052, n. 3; sec. 669, p. 1054, n. 34; sec. 674, p. 1058, n. 92 New; sec. 711, p. 1089, n. 39, 40.
[2]   Mines and Minerals, 40 C. J., sec. 666, p. 1053, n. 16; sec. 667, p. 1053, n. 16.
[3]   Mines and Minerals, 40 C. J., sec. 666, p. 1052, n. 3.
[4]   Appeal and Error, 4 C. J., sec. 3044, p. 1059, n. 1, 5.   Mines and Minerals, 40 C. J., sec. 685, p. 1068, n. 24; sec. 694, p. 1076, n. 47; sec. 696, p. 1078, n. 79; sec. 704, p. 1085, n. 79 New.

*Appeal from District Court, Blaine County; Charles A. Rose, Judge.*

SUIT by William Bowes against the Republic Oil Company and others to quiet title, in which B. N. Forbes, trustee, alone defended. From a decree in favor of plaintiff, defendant Forbes appeals. Affirmed.

*Messrs. Wood & Cooke,* for Appellant, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

Lease provision to diligently prosecute drilling or lease to be null and void is a covenant or condition not self-operative, the breach of which has been waived. We have here an agreement, exactly as in the case of any other option that has been acted upon. A condition of this agreement is that the lease is to be null and void if drilling operations are not prosecuted with due diligence. In other words, the obligation of the lessor is to be no longer binding upon him if the lessee discontinues drilling operations. Hence we have a case within the rule of section 7404, Revised Codes of Montana of 1921, which reads as follows, to-wit: "A condition subsequent is one referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition."

It seems clear to us, from the terms of this statute, that the provisions of the lease as to prosecuting drilling operations with diligence constitute a condition subsequent. The language of the statute makes it wholly plain that affirmative action is necessary if one would avail himself of a condition subsequent. (See *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842; *King* v. *Seebeck,* 20 Idaho, 223, 118 Pac. 292; *Wilcoxson* v. *Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629; 1 Thornton on Oil and Gas, 4th ed., pp. 516, 548, 1620, 1674; 2 Devlin on Real Estate, 2d ed., pp. 1781, 1782; 5 Page on Law of Contracts, pars. 2644, 2647; Archer on Oil and Gas, pp. 486, 487; *Bay State Petroleum Co.* v. *Penn Lubricating Co.,* 121 Ky. 637, 87 S. W. 1102; *Pyle* v. *Henderson,* 65 W. Va. 39, 63 S. E. 762; *Cadillac Oil & Gas Co.* v. *Harrison,* 196 Ky. 290, 244 S. W. 669; *Lane* v. *Urbahn* (Tex. Civ. App.), 265 S. W. 1063; *Duffield* v. *Michaels,* 102 Fed. 820, 42 C. C. A. 649; *Southwestern Oil Co.* v. *McDaniel,* 71 Okl. 142, 175 Pac. 920; *Kansas Natural Gas Co.* v. *Harrison,* 79 Kan. 167, 100 Pac. 72; *Duntley* v. *Anderson,* 169 Fed. 391, 94 C. C. A. 647.)

*Mr. Charles Davidson* and *Mr. R. M. Amour,* for Respondent, submitted a brief; *Mr. Davidson* argued the cause orally.

Although the instant lease is not a typical "unless" lease, it does provide for an automatic termination upon failure of the lessee to comply with its drilling requirements.

Under the drilling clause of the lease the language and meaning are plain that unless the lessee complied with the drilling requirements the lease should be void. The lessee does not bind himself to do anything: Should he fail to drill he is not required to pay any rent, the only provision in such case being for the termination of the lease. The only consideration moving to the lessor was the promise to pay a royalty in case oil or gas should be found in paying quantities. Certainly appellant could not contend that respondent would have the right to specifically enforce the drilling of a test well or that

respondent could sue the lessee for damages for failure to drill the test well. The matter was entirely optional with the lessee, the only condition in the lease being that if he did not comply with the drilling requirements the lease should be null and void. Being optional with the lessee, the lease is construed strictly against him (*McDaniels* v. *Hager-Stevenson Oil Co.,* 75 Mont. 356, 243 Pac. 582; *Solberg* v. *Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168), and time is of the essence of such a lease. (*McDaniels* v. *Hager-Stevenson Oil Co., supra; Thomas* v. *Standard Development Co.,* 70 Mont. 156, 224 Pac. 870.) The mere fact that the lease recites that the lessee "covenants and agrees" does not in the least affect the construction of the drilling clause under consideration. That clause speaks for itself.

Appellant assumes that an estate has been created because of the drilling operations commenced in July, 1921, and that therefore the forfeiture clause has become a condition subsequent and the lease can only be determined by some action on the part of the lessor. Assuming that the contention of respondent is correct, yet this fact would not operate to defeat an automatic termination. (*Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700; see, also, 4 Thornton on Oil and Gas, p. 155; *Hunter* v. *Brooker,* 158 La. 690, 104 South. 618.)

The evidence in the instant case is undisputed that the plaintiff has been in continuous possession of the premises in question since 1918. Lessees have never taken possession of plaintiff's premises under the lease. Such being the case notice of forfeiture was not necessary. "If the lessor be in possession, notice to the lessee of his intention to declare a forfeiture is not necessary, unless the lease provide for it." (1 Thornton's Law of Oil & Gas, 539; *Mitchell* v. *Probst,* 52 Okl. 10, 152 Pac. 597.)

In pleading waiver of the drilling requirements under the lease appellant necessarily confessed a breach of those same drilling requirements. He has affirmatively alleged a breach of the drilling requirements in his answer. Having confessed

such a breach under the terms of the lease he is bound by the result of such admission, since there was an automatic termination of the lease. By reason of breach of the drilling requirements there can be no such defense as waiver. There can be no waiver unless at the time of its exercise the right or privilege waived was in existence. There can be no waiver of a right that has been lost. (*State ex rel. Driffill* v. *City of Anaconda,* 41 Mont. 577, 111 Pac. 345; *Kennedy* v. *The Grand Fraternity,* 36 Mont. 325, 25 L. R. A. (n. s.) 78, 92 Pac. 971; *Jenkins* v. *Williams,* 191 Ky. 165, 229 S. W. 94.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from decree quieting title to real estate. On May 13, 1924, William Bowes commenced an action to quiet title to a tract of land owned by him and lying in Blaine county. In his complaint he named a large number of individuals and corporations and included all unknown claimants, and alleged that, while the defendants might claim some interest in the land, no one of them had any right, title or interest therein.

B. N. Forbes, trustee, alone contested the right of the plaintiff to a decree quieting his title to the land. By answer Forbes claimed an interest in the premises by reason of an oil and gas lease executed by plaintiff to the Republic Oil Company on November 5, 1920, which was thereafter assigned to him. He alleged that the covenants and agreements contained in the lease had been fully performed by the company, except as to those waived by the plaintiff, and affirmatively pleaded a waiver by plaintiff in permitting and encouraging the company to conduct and carry on drilling operations after default and with full knowledge of the nonperformance of the conditions of the lease. The affirmative matter contained in the answer was denied by a reply.

After a full hearing the court found all of the issues in favor of plaintiff, and made and entered its decree quieting title in him.

The findings of fact, conclusions of law and decree were filed on January 2, 1926, evidently as parts of but one instrument, and on January 7 plaintiff's counsel served counsel for defendant with notice of entry of judgment to which was attached a full copy of the decree which set forth the findings of fact and conclusions of law.

On January 28, 1926, the defendant served upon counsel for the plaintiff a notice of the filing of the findings of fact, and thereupon filed exceptions to the findings made and demanded that the court make additional findings set forth in his exceptions. The court took no action in the matter, and, on settlement of defendant's bill of exceptions in April, 1926, struck from the files the exceptions to the findings.

Defendant makes but two specifications of error: (1) That the evidence is insufficient to sustain the judgment or the findings on which it is based; and (2) that the court erred in its failure to remedy the defects in its findings in accordance with the exceptions taken thereto, and in striking the exceptions from the files.

The lease in question provides that for and in consideration of $1 the lessor does "grant, demise, lease, and let" the lands described unto the lessee "for the sole and only purpose of mining and operating for oil," *etc.;* and that "in consideration of the premises the said lessee covenants and agrees: 1st. Unless operations for the drilling of a test well be commenced and prosecuted with due diligence upon the above-described land or within the radius of three miles therefrom on or before July 1, 1921, this lease to be null and void, said test well to be drilled to a depth of at least 2,500 feet unless oil or gas in paying quantities be produced at a lesser depth." It then provided that if oil or gas in paying quantities be discovered in the vicinity of the land, the lessee agrees to commence operations for drilling plaintiff's land within twelve months thereafter. It is further provided that the lease shall be in full force and effect for the time specified for the commencement of operations, "and as long thereafter as oil and gas be

produced in paying quantities upon the above-described land."
The lease closes with a surrender clause under which the lessee
may surrender the lease for cancellation at any time on the
payment of $1.

The plaintiff proved his title to the land and introduced the
lease in evidence; he then showed that the company commenced
operations within time by the commencement of a well on land
adjacent to his, but drilled only for a period of six or seven
days and reached a depth of only 465 feet, when the well was
abandoned without the discovery of oil or gas, and that this
well was dismantled in April, 1922.

Without disputing the testimony on the part of plaintiff, the
defendant showed to the court that the land was upon what is
known as the "Bowes structure," which consists of a north
and south dome, but that the south dome was higher and there-
fore more promising for a test well. He then showed that
during the year 1923 a rotary well was sunk on the south
dome at a point less than three miles from plaintiff's land to
a depth of 1,200 feet, and that thereafter, under an agreement
with the Standard Oil Company of California, that company
commenced a well within 30 feet of the 1,200-foot hole and at
a depth of 1,200 feet struck a heavy flow of gas, but that their
rig was struck by lightning and broke down; that the com-
pany is still drilling and has reached a depth of 3,300 feet
at a cost of $130,000.

One Boyd, in charge of these operations, testified that he had
had several conversations with the plaintiff and that plaintiff
knew of this well, which the witness referred to in the first of
such conversations as "the test well." He testified further
that in the summer of 1923 he requested Bowes to execute to
him a new lease for the reason that the lease in effect was not
in "commercial form," which expression he explained as being
form No. 88, known to all oil operators. Asked whether plain-
tiff in any of these conversations "repudiated the lease" here
involved, the witness answered, "No, sir." On cross-examina-

tion he stated that at one time plaintiff executed a new lease to him, but that, as it was further from a commercial lease than the one in suit, he returned it.

The plaintiff, on rebuttal, testified that what Boyd had sought of him was a lease on the land for the Boyd Oil & Gas Company, but denied that Boyd said anything about a test well or why he wanted a lease executed, stating, "He said he just wanted a lease; he wanted my lease." On cross-examination plaintiff admitted that he had seen a tower or "mast" at the point where the later well was drilled.

1. Admitting that he or his predecessor in interest did not **[1–3]** diligently prosecute the drilling operations commenced July 1, 1921, defendant contends that the provision in the lease to the effect that such failure shall render the lease "null and void" is not self-operative. This contention is based upon the fact that the lease in question prefaces the provision numbered "1st" above by the phrase, "The lessee covenants and agrees."

Defendant asserts that the lease therefore contains agreements on the part of the lessee and is thus distinguished from those leases which contain a mere option, and further asserts that, while the covenant to commence drilling within a certain time is in the nature of a condition precedent to the accruing of rights in the lease, the covenant to prosecute drilling operations with diligence is a condition subsequent; that by commencing within time defendant acquired an interest which can only be defeated by affirmative action. This might be so if in fact the lessee covenanted to perform any act or thing; but if we give full weight to the phrase quoted, all that the lessee covenanted and agreed was that if he did not commence operations on or before July 1, 1921, and thereafter prosecute those operations with diligence, the "lease to be null and void."

It is the plain intention of the parties and not the mere wording of a lease which fixes its nature as an "or" lease or an "unless" lease, as defined in *McDaniel* v. *Hager-Stevenson*

*Oil Co.,* 75 Mont. 356, 243 Pac. 582. In this connection it must be remembered that such leases as this are executed for the purpose of having lands explored, tested and drilled to determine whether oil and gas may be found therein, and, therefore, to the end that development may be promoted and delays therein prevented (*New State Oil Co.* v. *Dunn,* 75 Okl. 141, 182 Pac. 514), they are to be construed liberally in favor of the lessor and strictly against the lessee. (*Daley* v. *Torrey,* 69 Mont. 599, 223 Pac. 498; *Thomas* v. *Standard Development Co.,* 70 Mont. 156, 224 Pac. 870; *Solberg* v. *Sunburst Oil & Gas Co.,* 73 Mont. 94, 235 Pac. 761; *McDaniels* v. *Hager-Stevenson Oil Co.,* above.)

While forfeitures are not usually favored in the law, owing to the peculiar nature of oil and gas leases, forfeitures are here favored rather than frowned upon. (Thornton on Oil and Gas, 4th ed., 512; *Solberg* v. *Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168.)

Reading the lease under consideration in the light of the foregoing special rules of construction, we are of the opinion that, while it does not conform to any of the known forms of oil and gas leases and does contain the phrases "grant, demise, lease, and let" and "covenant and agree," it in fact goes no further than to grant to the lessee the privilege of drilling or not drilling at its option and requires the lessee to do nothing, and, if drilling is commenced, the lessee is required to prosecute such operations to completion with diligence. In all essential features this lease is analogous to the one under consideration in *McDaniels* v. *Hager-Stevenson Oil Co.,* above. It is true that it does not contain the clause, "unless" the lessee pay rent, but it does provide that the lease shall be null and void unless the lessee sees fit to commence operations within the time limit and continue those operations with diligence until gas or oil is discovered in paying quantities or the required depth is reached, and does not require the lessee to do either of these things. It falls, then, within the category of

the "unless" form of lease, which terminates *ipso facto* on failure to exercise the option granted and under which no affirmative action is required of the lessor. It is therefore immaterial that the lessor took no action to declare a forfeiture before bringing his action, as the lease automatically expired long prior to the commencement of the action. (*Solberg* v. *Sunburst Oil & Gas Co.*, 76 Mont. 254, 246 Pac. 168.)

2. Defendant contends, however, that plaintiff waived the forfeiture by his conduct in permitting the defendant to drill a [4] second and third test well on the structure after the first default, and at great expense to the lessee, he having full knowledge of what was being done. As to knowledge on the part of the plaintiff, there is a substantial conflict in the evidence, as above noted, and if this question were determinative, we would not disturb the court's implied finding against the contention of the defendant. However, it must be remembered that none of the operations of the lessee or its successors were conducted upon the lands of plaintiff. How, then, could plaintiff have prevented the lessee from proceeding had he desired to do so? Without passing upon the contention of plaintiff that the defendant is seeking to invoke an estoppel, not pleaded, rather than the waiver pleaded, there was no obligation resting upon plaintiff to object to operations not upon his land, and his failure to do so constituted neither a waiver of the forfeiture nor an estoppel to assert it. (*Solberg* v. *Sunburst Oil & Gas Co.*, last cited.)

3. As the lease did not have a fixed term, but provided that it should be null and void unless the lessee commenced operations for the drilling of a test well on the structure on or before July 1, 1921, and prosecuted such operations with diligence until the well was completed as specified, and further provided for the drilling of a well on the plaintiff's land within twelve months after oil or gas was discovered, if discovered in such test well, and only provided for an extension of time if such products were discovered in paying quantities in the wells "specified herein," for as long a time as they should

continue to produce oil and gas in paying quantities, on the failure of the lessee to prosecute the drilling of the initial well with diligence, the lease expired by its own terms.

4. Defendant's "exceptions for defective findings" asserted that the findings made were defective in that the court did not find whether or not (1) the Republic Oil Company was prosecuting operations for the drilling of a well within a radius of three miles of plaintiff's land at the time the action was commenced; (2) that the plaintiff took any affirmative action to cancel the lease prior to commencing his suit; and (3) the Republic Oil Company or its assigns or successors did, in the year 1923, or subsequent thereto, prosecute such operations—and demanded that the court make findings thereon. From what has been heretofore said it is apparent that such findings, if made, would have been wholly immaterial and could not have affected the decree rendered; if, therefore, error was committed in failing to act upon such exceptions and in striking the same from the files, it was nonprejudicial error.

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

MR. JUSTICE MYERS did not hear the argument and takes no part in the foregoing decision.